IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Debra K. Middleton,  :
       Plaintiff,  : 1:10-CV-821
   vs.  :
Rogers Ltd., Inc., et al.,  :
       Defendants.  :

O R D E R

This matter is before the Court on a motion to dismiss by Defendant Rogers Ltd., Inc. (Doc. No. 11), Plaintiff Debra K. Middleton's motion for leave to amend (Doc. No. 15), and Defendant Rogers' motion to strike (Doc. No. 22). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED**; Plaintiff's motion for leave to amend is **DENIED**. Defendant's motion to strike is, therefore, moot.

I. Factual Background

Plaintiff Debra Middleton bought approximately $4,000 worth of jewelry from Defendant Rogers Ltd., Inc. ("Rogers") in November 2008. Complaint ¶ 6-7. She financed her purchase with a Rogers "24 Karat Preferred Card" that she applied for and received the day of purchase. Id. ¶ 8. The credit card was interest-free as long as Plaintiff paid off her purchase within 18 months. Id. ¶ 9. The credit card was issued by Defendant Citibank (South Dakota), NA ("Citibank"). Id. ¶ 5. Plaintiff paid

off the entire amount of this purchase before the 18-month interest-free period expired. Id. ¶ 10.

In October 2009, Plaintiff received a call from Citibank's customer service department informing her that she was delinquent on her payments. Id. ¶ 11. In fact, Citibank informed her that the balance on her credit card was $13,000. Id. ¶ 13. Plaintiff, however, stated that she was not delinquent and had paid the original balance on the account in full. Id. ¶ 12.

Plaintiff then contacted Citibank's fraud division, who informed her about significant charges to her account in April and August of 2009. Id. ¶ 15. Plaintiff, however, denied that she made those purchases and stated that she had not received a statement from Citibank since April 2009. Id. ¶ 16. Plaintiff disputed these charges with Citibank by phone in November 2009 and in writing in December 2009 and February 2010. Id. ¶¶ 20-24. In March 2010, Citibank informed Plaintiff that it was closing its investigation because she failed to provide requested information. Id. ¶ 24. Plaintiff also received a second letter from Citibank in March 2010 stating that it had not received her previous fraud report. Id. ¶ 25. In response to these letters, Plaintiff resubmitted to Citibank all of the documentation related to the disputed charges and sent the same documentation to Rogers. Id. ¶ 26.

On April 8, 2010, Plaintiff received a letter from Rogers

informing her that her account balance was $0.00. Id. ¶ 27. Plaintiff then received a statement with a closing date of April 16, 2010, indicating that her account balance was $13,534.25. Id. ¶ 28. Plaintiff then sent a letter to Rogers disputing any charges above her original $4,000 purchase. Id. Plaintiff then received a statement with a closing date of May 18, 2010 indicating that her account balance was $2,126.75. Id. ¶ 29. On May 19, 2010, Plaintiff received a letter from Rogers asking her to contact its customer service department. Id. ¶ 30. When she did, Rogers informed Plaintiff that her account balance was $0.00 Id. ¶ 31.

Thereafter, the complaint reflects a series of contacts between Plaintiff and Citibank in which she disputed the charges and Citibank failed or refused to correct her account balance. Id. ¶¶ 32-39. The final statement included in the complaint reported Plaintiff with a balance of $12,082.71 as of August 18, 2010. Id. ¶ 38.

## II. Procedural History

On November 22, 2010, Plaintiff filed a complaint (Doc. No. 1) charging Rogers and Citibank with violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692d, and the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666. Plaintiff and Citibank reached an agreement, dismissing Plaintiff's claims against Citibank with prejudice on July 6, 2011.

In March 2011, Rogers filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff responded with a memorandum in opposition and a motion for leave to amend the complaint. All of these pleadings have been fully briefed and are ready for disposition. On April 26, 2011, Plaintiff filed an amended complaint without leave of the Court or consent of Rogers. Rogers has filed a motion to strike the amended complaint; as Plaintiff did not file a timely memorandum in opposition, that motion is also ready for disposition.

### III. Analysis

Because neither the FDCPA nor the FCBA claims in Plaintiff's complaint state a claim upon which relief can be granted, Rogers' motion to dismiss the complaint is well-taken. Because Plaintiff's proposed amended complaint would not survive a 12(b)(6) motion to dismiss, Plaintiff's motion to amend the complaint is not well-taken. Because the Court denies Plaintiff leave to file an amended complaint, Defendant's motion to strike is moot.

**A. Defendant's motion to dismiss**

*1. Rule 12(b)(6) standard of review*

A motion to dismiss for failure to state a claim operates to test the sufficiency of the complaint. The court must construe the complaint in the light most favorable to Plaintiff, and

accept as true all well-pleaded factual allegations. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983). The court need not accept as true legal conclusions or unwarranted factual inferences. Lewis v. ACB Business Servs., Inc., 135 F.3d 389, 405 (6th Cir. 1998).

The complaint, however, must contain more than labels, conclusions, and formulaic recitations of the elements of the claim. Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295 (6th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The factual allegations of the complaint must be sufficient to raise the right to relief above the speculative level. Id. Nevertheless, the complaint is still only required to contain a short, plain statement of the claim indicating that the pleader is entitled to relief. Id. (citing Erickson v. Pardus, 551 U.S. 89, 93 (2007)). Specific facts are not necessary and the pleader is only required to give fair notice of the claim and the grounds upon which it rests. Id. To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). Mere conclusions, however, are not entitled to the assumption of truth. Id. at 1950. A claim

is facially plausible if it contains content which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 1949. Plausibility is not the same as probability, but the complaint must plead more than a possibility that the defendant has acted unlawfully. Id. If the complaint pleads conduct which is only consistent with the defendant's liability, it fails to state a plausible claim for relief. Id.

    2. *Fair Debt Collection Practices Acts*

The complaint alleges that Rogers violated the FDCPA, 15 U.S.C. § 1692d, by harassing, oppressing, or abusing her in connection with the collection of the debt on her credit card. The harassment and oppression were allegedly caused by Rogers repeatedly telephoning Plaintiff or engaging her in telephone conversations. Complaint ¶ 45.

The FDCPA prohibits a "debt collector" from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Section 1692d then provides a non-exhaustive list of harassing or oppressing conduct, which includes "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Id. Under the FDCPA a "debt collector" is "any person who uses any

instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

In its motion, Rogers asserts a number of grounds for dismissing Plaintiff's FDCPA claim. First, Rogers argues that this claim should be dismissed because it is not a "debt collector" within the meaning of the Act. Second, Rogers argues that this claim should be dismissed because the complaint fails to show that it was attempting to collect a "debt" within the meaning of the Act. Third, Rogers argues that this claim should be dismissed because the complaint fails to allege that it engaged in any harassing or abusive conduct. The Court agrees with all of these arguments.

The complaint fails to allege facts that show that Rogers was attempting to collect a debt or engaged in any harassing or abusive conduct. According to the complaint, Rogers' sole participation in this billing snafu was sending Plaintiff a letter asking her to contact its customer service department followed by one phone conversation in which Rogers informed her that her account balance was zero. The Court is not required to credit Plaintiff's conclusory allegation that Rogers "repeatedly caused the telephone to ring or engaged [her] in telephone

conversation" since this is just a recitation of the statutory elements of her claim. See supra, at 5. As Rogers correctly argues, these allegations fail to establish that it was attempting to collect a debt or that it engaged in any improper conduct.

As Rogers also correctly points out, to the extent the complaint may be construed to assert facts demonstrating that it attempted to collect a debt from Plaintiff, the FDCPA claim would still fail because the complaint shows that Rogers was attempting to collect its own debt. Parties attempting to collect their own debts are not covered by the FDCPA. MacDermid v. Discover Fin. Serv., 488 F.3d 721, 734-35 (6th Cir. 2007).

Plaintiff's memorandum in opposition does not appreciably clarify the theory of her FDCPA claim against Rogers. She apparently contends, however, that Rogers was attempting to collect a debt on behalf of Citibank because she alleges that she paid the charges for her original purchase directly to Rogers at the store. Doc. No. 13, at 5-6. Thus, according to Plaintiff, Rogers was a "debt collector" on behalf of Citibank. Even accepting this factual allegation as true, the complaint still fails to allege any attempts by Rogers to collect the balance of the account from Plaintiff. As already stated, the complaint indicates that Rogers' only direct contacts with Plaintiff informed her that her account balance was $0.00. A debt of zero

cannot be collected. To the extent that Rogers erroneously billed Plaintiff for purchases she did not make, which is really what Plaintiff's FDCPA claim appears to be complaining about, Rogers would still be attempting to collect its own debt. Therefore, as stated, the complaint fails to establish that Rogers is a "debt collector" within the meaning of the FDCPA.

Accordingly Rogers' motion to dismiss Plaintiff's FDCPA claim is well-taken and is **GRANTED**.

*3. Fair Credit Billing Act*

The complaint also alleges that Rogers violated the FCBA, 15 U.S.C. § 1666, by continuing to attempt to collect an improper debt after being notified of a billing error and without explaining why it believed the charges were correct. Complaint ¶¶ 48-51.

Section 1666(a) provides that if, within sixty days after having sent an obligor a statement of his or her account, the creditor receives a written notice from the obligor indicating his or her belief that the statement contains a billing error, the amount of the error, and the reason for believing there is an error, the creditor must make corrections in the account or investigate and explain why the account is correct *prior to taking any action to collect the amount*. 15 U.S.C. § 1666(a) (emphasis added). As can be seen, this statute is triggered when a creditor sends an obligor a statement and the obligor notifies

the creditor that the statement is incorrect. <u>Dawkins v. Sears Roebuck & Co.</u>, 109 F.3d 241, 243 (5th Cir. 1997). The sixty-day period in which an obligor can file a notice of a billing error begins to run "after the creditor transmitted the *first* periodic statement that reflects the alleged billing error." 12 C.F.R. 226.13(b)(1) (emphasis added). Billing errors which trigger Section 1666(a) include "reflections[s] on a statement of an extension of credit which was not made to the obligor" and "[f]ailure to transmit the statement required ... to the last address of the obligor which has been disclosed to the creditor." 15 U.S.C § 1666(b)(1), (6).

In this case, Plaintiff claims that the statements sent by Citibank should also be considered to have been sent by Rogers because "it is the common business practice of Rogers to send such statements through Citi[bank] who they have financing the credit card that is specifically for their store, and used only at their store [sic]" and Rogers is also listed on the statements. Doc. No. 13, at 7. Defendant argues that Rogers sent no statement to Plaintiff to trigger Section 1666. Doc. No. 16, at 5. Additionally, Rogers argues that it did not attempt to collect Plaintiff's debt. <u>Id.</u>

Because this is a 12(b)(6) motion, the Court will only consider the factual allegations made in the complaint, not those included in legal memoranda or in attachments thereto. Assuming

but without deciding that Rogers is a creditor under Section 1666, the first statement that Plaintiff received detailing the charges she disputes arrived around December 1, 2009. Although Rogers argues that the complaint does not allege Rogers sent Plaintiff the statements, the complaint does not specify that the statements were from Citibank. Therefore, it is logical for the Court to conclude that both Defendants were responsible for the statements. However, although Plaintiff sent a notice to Citibank at that time and had been in contact with Citibank's customer service department and fraud division, she did not send a written notice of the problem to Rogers until March 30, 2010, more than sixty days after she received the first statement with the incorrect charges. Therefore, even assuming without deciding that Rogers is a creditor, the notice to Rogers was not timely under 15 U.S.C. § 1666 and 12 C.F.R. 226.13(b). Accordingly, Rogers motion to dismiss Plaintiff's FCBA claim is well-taken and is **GRANTED**.

**B. Plaintiff's motion to amend initial complaint**

*1. Standard of review*

Under Rule 15(a) of the Federal Rules of Civil Procedure, a plaintiff may amend his pleadings as a matter of course if it is filed within 21 days after service of a 12(b)(6) motion. Fed. R. Civ. P. 15(a)(1)(B).  If a plaintiff wishes to file an amended complaint after the 21 day grace period and she is required to

seek leave of the court to do so. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[a] district court may deny a plaintiff leave to amend his or her complaint . . . when the proposed amendment would be futile." Kottmyer v. Maas, 436 F.3d 684, 692 (6th Cir. 2006). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000). Therefore, to decide whether to grant Plaintiff's motion to file an amended complaint, the Court must determine whether the additional facts alleged in the proposed amended complaint state claims upon which relief can be granted.

*2. Additional factual allegations and claims*

Plaintiff's motion does not append a copy of the proposed amendment; however, the Court will consider the document filed as "Amended Complaint and Request for Jury Trial" (Doc. No. 17) as Plaintiff's proposed amendment.

In the proposed amended complaint, Plaintiff describes a series of billing statements, given to Plaintiff's counsel, that Plaintiff alleges she did not receive through the mail; Plaintiff has also alleged two additional claims for relief. See Doc. No. 17, at ¶¶ 43-52, 63-71. The amendments allege an increase in Plaintiff's credit line she did not request in May 2009, purchases totaling over $6,000 in July 2009, and purchases

-12-

totaling over $3,600 in August 2009. Then, after an October 2009 statement reflecting a balance of over $13,000, a November 2009 statement showed a balance of approximately $3,700. The full balance was replaced by a January 2010 statement, only to be removed entirely and a credit of over $100 reflected on an April 2010 statement. Finally, a June 2010 statement showed a balance of over $13,000 again. Plaintiff alleges that the billing statements listed Rogers and directed Plaintiff to address notices of billing errors to Rogers.

Plaintiff also added two counts to her complaint. First, she alleges that Rogers had "a duty to exercise reasonable care in conducting transactions in their business" and that Rogers "breached that duty by failing to verify the identity and authorization of use" for all of the improper charges, causing her emotional harm, false credit card charges, and damage to her credit score. Doc. No. 17, at ¶¶ 64-67. Second, Plaintiff alleges that Rogers misrepresented to her that she had no outstanding balance on her account and that she relied on those misrepresentations, causing her emotional harm and damage to her credit. Id. at ¶¶ 69-71.

*3. Original two counts*

The proposed amended complaint does not allege facts that would save Counts I and II from a motion to dismiss. First, the amendments to the complaint contain no facts that would change

this Court's analysis of the FDCPA claim; therefore, Count I would still fail to state a claim. The only allegations added that would impact Count II are that Rogers' name appeared on the statements and that the statements informed Plaintiff to contact Rogers if there were any billing errors. However, the Court had already assumed that the statements were (at least in part) sent by Rogers. The flaw in Plaintiff's FCBA claim is that she did not submit timely notice to Rogers. If anything, the amendments undermine Plaintiff's claim because the statement that she received prompting her December 1, 2009 letter to Citibank directed her to send a written notice to Rogers, which she did not do. Therefore, amending the complaint would be futile with respect to Counts I and II.

    *4. Count III*

Plaintiff's putative third claim for relief alleges a negligence claim against Rogers. Plaintiff contends that Rogers owed Plaintiff a duty to use reasonable care in conducting payment transactions, that Rogers breached that duty by not checking to see if the use of Plaintiff's account was authorized, and that this breach of duty caused Plaintiff emotional and economic harm. Plaintiff must allege sufficient facts to meet each element of a negligence claim: "the existence of a duty, a breach of the duty, and an injury proximately resulting therefrom." Nageotte v. Cafaro Co., 828 N.E.2d 683, 688 (Ohio Ct.

App. 2005).

Plaintiff has alleged that the breach caused her emotional harm, stress, and anxiety, and damage to her credit and false charges. Rogers argues that the economic loss doctrine bars Plaintiff's negligence claim since "[t]he economic-loss rule generally prevents recovery in tort of damages for purely economic loss." Doc. No. 15, at 4 (quoting Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc., 835 N.E.2d 701, 704 (Ohio 2005)). Economic loss includes money lost through unauthorized credit card charges. Pavlovich v. National City Bank, 435 F.3d 560, 569 (6th Cir. 2006) (citing Sovereign Bank v. BJ's Wholesale Club, Inc., 395 F. Supp. 2d 183, 204 (M.D. Pa. 2005)). Plaintiff argues that she does not just allege "purely economic loss," but rather damages for emotional harm as well. The economic loss doctrine only applies when no personal injury or property damage exists. Id.

The Ohio Supreme Court has reasoned that purely economic loss should not be recoverable under tort where there is also a contract, because protection for economic losses should arise under the bargained-for contract. Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co., 537 N.E.2d 624, 630-31 (Ohio 1989). Therefore, where a contractual relationship exists between two parties, economic loss caused by one party's negligence is not recoverable in tort. However, if the economic loss arises from a

personal injury or property damage caused by a party's negligence, then that loss is recoverable in tort. See id. at 631 ("If the defect in the arch dryer had caused personal injury or damage to other property of [Plaintiff], [Defendant] might be found to have breached its duty of care imposed by law, and recovery in negligence would accordingly lie."). Plaintiff does not allege that her economic losses were caused by any personal injury or damage to property. Therefore, the economic loss doctrine would bar her recovery of those damages.

With respect to Plaintiff's claim of emotional damages, Ohio law limits recovery for negligent infliction of emotional distress to those who suffer a contemporaneous physical injury and to those bystanders not directly involved but who suffer severe, debilitating, and reasonably foreseeable emotional injuries. Heiner v. Moretuzzo, 652 N.E.2d 664, 668 (Ohio 1995). Plaintiff's claim of emotional harm caused by Rogers' alleged breach of duty does not fall into either category. Plaintiff would not be able to recover her emotional distress damages. Therefore, even assuming, but without deciding, that Plaintiff appropriately alleged a duty and a breach of that duty, Count III would not survive a 12(b)(6) motion, as Plaintiff cannot recover the damages alleged.

   5. *Count IV*

Plaintiff also alleges that Rogers misrepresented to her

that she had no outstanding balance on her account while possessing information to the contrary, that she relied upon those misrepresentations, and that she suffered emotional damages and harm to her credit score. Doc. No. 17, at ¶¶ 69-71. This count can be seen as either a claim for fraud or for negligent misrepresentation.

To prove a fraud in Ohio, a plaintiff must demonstrate a material representation - knowingly false or with utter disregard and recklessness as to whether it is true or false - made with intent to induce reliance and which actually induces justifiable, detrimental reliance. Burr v. Bd. of Cnty. Comm'rs, 491 N.E.2d 1101, 1105 (Ohio 1986). Assuming without deciding that Plaintiff has alleged a knowing or reckless misrepresentation, Plaintiff has not alleged any intent to induce reliance. Rule 9(b) requires that plaintiffs asserting a claim for fraud allege "the fraudulent intent of the defendants," among other specifically alleged elements. United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 342 F.3d 634, 643 (6th Cir. 2003) (citing Coffey v. Foamex L.P., 2 F.3d 157, 161-62 (6th Cir. 1993)). Despite Plaintiff's assertion to the contrary, see Doc. No. 13, at 4, Plaintiff merely alleges in the proposed amended complaint that there was a misrepresentation, not that it was made with intent to induce reliance. Therefore, Count IV does not state a claim for fraud.

Under Ohio law, the elements for negligent misrepresentation are:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Delman v. City of Cleveland Heights, 534 N.E.2d 835, 838 (Ohio 1989) (quoting Restatement (Second) of Torts § 552 (1977)). It is clear that Plaintiff must show detrimental reliance upon a misrepresentation, negligently made, in guidance of a business transaction. Plaintiff has not alleged in the proposed amended complaint that the misrepresentation was in guidance of a business transaction. There are no facts in the complaint to suggest that Rogers intended to induce her to act in a certain way, nor any facts to indicate that Rogers knew or should have known she would use this information in a business transaction. In fact, there is no allegation of a business transaction resulting from the alleged misrepresentation at all.

Additionally, Plaintiff is unable to recover the damages she alleged she has sustained as a result of negligent misrepresentation. Plaintiff asserts that she is worse off emotionally (in the form of distress, stress, and anxiety) and in the form of her credit score. Doc. No. 17, at ¶ 71. However, recovery for negligent misrepresentation is solely limited to

"the pecuniary loss" to Plaintiff, including "the difference between value of what he has received in the transaction and its purchase price or other value given for it" and "pecuniary loss suffered otherwise." Restatement (Second) of Torts § 552B, cited in Harrell v. Crystal, 611 N.E.2d 908, 913 (Ohio Ct. App. 1992). Plaintiff has not alleged any pecuniary loss, and so she cannot recover under negligent misrepresentation. Therefore, Count IV would also not survive a 12(b)(6) motion to dismiss.

Plaintiff's motion to amend initial complaint would be futile. Defendant's motion to strike Doc. No. 17 is, therefore, moot.

## IV. Conclusion

For the above reasons, Rogers' motion to dismiss (Doc. No. 11) is **GRANTED**. Plaintiff's motion to amend initial complaint (Doc. No. 12) is **DENIED**. Rogers' motion to strike (Doc. No. 22) is moot. Counts I and II of Plaintiff's complaint are hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**

Date July 26, 2011                    s/Sandra S. Beckwith
                                      Sandra S. Beckwith
                                      Senior United States District Judge